UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NATHAN'S HOMES, INC.,

      Plaintiff,

    v.

FIFTH THIRD BANK, N.A.,

      Defendant.

      Case No. 2:25-cv-00987-KCD-DNF

_____/

## ORDER

Before the Court is Defendant Fifth Third Bank, N.A.'s motion to dismiss. (Doc. 22.)[1] Plaintiff Nathan's Homes, Inc. has responded in opposition (Doc. 23), making this matter ripe. For the reasons below, Fifth Third Bank's motion is **GRANTED IN PART AND DENIED IN PART**.

## I. Background[2]

This case arises out of a fraudulent wire transfer. Plaintiff is a Florida-based business that opened a bank account at Fifth Third Bank. (Doc. 1 ¶ 6.) According to the complaint, the parties met several times to discuss improving the account's security, and Plaintiff was assured that its funds were secure. (*Id.* ¶¶ 8-10.) Still, Plaintiff logged into the account one day to discover that

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

[2] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

$854,864.00 had been stolen. Apparently, the money was wired to two different LLCs that Plaintiff did not recognize.

Plaintiff promptly informed Fifth Third Bank of the wire, but the bank did not resolve the issue satisfactorily. Due to the missing funds, the account incurred several fees, checks were returned or canceled for insufficient funds, the business lost a key client, employees were laid off, and overall business performance declined. (*Id.* ¶ 24.)

So, Plaintiff now sues. It alleges eleven counts against Fifth Third Bank: violation of the Electronic Fund Transfer Act ,15 U.S.C. § 1693 (Count I), breach of contract (Count II), negligence (Count III), gross negligence (Count IV), negligent misrepresentation (Count V), fraudulent misrepresentation (Count VI), intentional infliction of emotional distress (Count VII), violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 (Count VIII), violation of Florida's Civil Remedies for Criminal Practices Act, Fla. Stat. § 772.103 (Count IX), breach of fiduciary duty (Count X), and violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) (Count XI). (Doc. 1.) Fifth Third Bank moves to dismiss each claim.

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A

2

claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss, courts must accept all factual allegations in the complaint as true and view the facts in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

### III. Discussion

To begin, the Court notes that it sits in diversity jurisdiction over a case involving several state-law claims. While federal law governs Plaintiff's federal claims and procedural matters, further analysis of the applicable choice-of-law principles is necessary before addressing the merits of the contract, tort, and state statute claims.

When a court is sitting in diversity, it applies the choice-of-law rules of the forum state—here, Florida. *McMahan v. Toto*, 256 F.3d 1120, 1131 (11th Cir. 2001). Under Florida law, parties get to choose the law that governs their

contractual relationship, so long as their choice isn't unreasonable or offensive to public policy. *Arndt v. Twenty-One Eighty-five, LLC*, 448 F. Supp. 3d 1310, 1315 (S.D. Fla. 2020). Here, the parties made a choice. When Plaintiff opened its account, it signed an agreement stating that Ohio law applies to "any claims or disputes relating to or arising out of this Agreement or the Services." (Doc. 22-1 at 11.) Fifth Third Bank seeks to enforce this provision. So the question that must be answered is whether Plaintiff's state claims "arise out of or relate to" the agreement or the underlying services. If it does, then the Court must apply Ohio law.

The choice-of-law provision is undeniably broad—a point Plaintiff does not even try to dispute. For every one of its eleven claims, Plaintiff relies on the same story: the parties formed an agreement, they discussed account security, and the bank ultimately failed to keep the funds safe. The contract itself exhaustively details who is responsible for which security measures and how the account must be managed. (Doc. 22-1 at 4-6, 8-9; Doc. 22-2 6-8, 13.) "[W]here the dispute occurs as a fairly direct result of the performance of contractual duties ... then the dispute can fairly be said to arise out of or relate to the contract in question." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009). That is exactly what we have here, and Plaintiff does not argue otherwise. (*See* Doc. 23.) Accordingly, the Court must agree that Ohio law governs Plaintiff's state-law claims.

4

**Count I—Electronic Fund Transfer Act ("EFTA")**

EFTA is a federal statute enacted to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund … transfer[s.]" *Corposistemas, C.A. v. Regions Bank*, No. 1:23-CV-23540-KMM, 2024 WL 2783124, at *2 (S.D. Fla. Feb. 5, 2024); 15 U.S.C. § 1693. Electronic fund transfers are "any transfer of funds … initiated through an electronic terminal … so as to … authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(7). The statute's primary objective is to protect "individual consumer rights." § 1693. EFTA defines "consumer" as "a natural person." § 1693a(6).

According to Fifth Third Bank, EFTA does not protect corporate entities like Plaintiff. The Court agrees. *See Corposistemas*, 2024 WL 2783124, at *3 ("EFTA applies only to consumers and not corporate entities."). Trying to skirt that obvious problem, Plaintiff pivots. It claims that discovery will eventually show it used the account for more than just business. (Doc. 23 at 6.) Because that raises a factual dispute, Plaintiff contends, the Court's hands are tied at this stage.

Not so. On a motion to dismiss, the Court accepts the facts pled in the complaint as true—it does not wait for discovery to reveal the facts that make a claim. While discovery can (and often does) reveal the facts necessary for the

5

plaintiff to prevail, there still must be enough facts to raise colorable claim. *Bell Atlantic Corp.*, 550 U.S. at 556.

The complaint does not name any natural person as a plaintiff. And whether or not Plaintiff is a natural person does not depend on how it uses its account. To state a claim under EFTA, the plaintiff needs to be a natural person and use his account "primarily for personal, family, or household purposes." 15 U.S.C. § 1693a(2), (6); *Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*, 193 F. Supp. 3d 1294, 1302 (S.D. Fla. 2016) ("The Court notes that [EFTA] defines 'consumer' as a 'natural person' and 'consumer accounts' as accounts 'established primarily for personal, family, or household purposes.'"); See *Edson v. Wells Fargo Bank, NA*, No. 3:24CV635-TKW-ZCB, 2025 WL 1042179 (N.D. Fla. Apr. 8, 2025)("If a plaintiff fails to plausibly allege that the account(s) in question were of the type covered by the EFTA, then dismissal is warranted."). So regardless of how Plaintiff used its business account, it remains an improper claimant under EFTA because it is not a natural person. Therefore, Count I is dismissed.

**Count II.    Breach of Contract**

The issue concerning Plaintiff's breach of contract claim is procedural. It revolves around whether Plaintiff was specific enough in alleging which provision of the contract it believes Fifth Third Bank breached. The complaint alleges that the parties "entered into a valid and binding contract when

[Plaintiff] opened [its] account … as evidenced by the account agreements."

(Doc. 1 ¶¶ 32-33.) It continues:

> [Fifth Third Bank] breached the contracts and the implied covenant [of good faith and fair dealing] by:
>
> a. Failing to maintain reasonable security measures to prevent unauthorized transactions
> b. Failing to implement requested enhanced security measures
> c. Failing to promptly investigate and reimburse unauthorized transactions
> d. Failing to act in good faith in handling Plaintiff's fraud claim
> e. Imposing improper fees and charges[.]

(*Id.* ¶ 34.)

Fifth Third Bank maintains that the complaint must specify which provision of the parties' contract enumerates such obligations and is therefore breached. The implied covenant of good faith and fair dealing, the bank contends, does not cut it because it is merely an implied companion to an express provision. Without an explicit clause alleged in the complaint, it accompanies nothing. Plaintiff counters that the allegations give Fifth Third Bank enough notice of the breached contract provision because they clearly specify what actions constituted the breach.

The language in the complaint is clear: Fifth Third Bank "breached the contracts and the implied covenant." (Doc. 1 ¶ 34.) Plaintiff does not rely solely on the implied covenant, but it also does not specify which other provisions

7

apply. This mistake is fatal. "In order to allege a material breach in accordance with the pleading standards required under the Federal Rules of Civil Procedure, the plaintiff must allege which provision of the contract has been breached." *Wohl Built, Inc. v. Maxum Indem. Co.*, No. 17-CV-80867, 2017 WL 10410373, at *2 (S.D. Fla. Dec. 21, 2017); *See Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1324 (S.D. Fla. 2020) ("At a minimum, a claim for breach of contract must identify the actual terms of the contract allegedly breached."). And "[w]hen a breach of contract claim fails to state which contractual provision was breached, the claim is appropriately dismissed." *Horsman v. Cooney*, No. 2:23-CV-1205-SPC-KCD, 2024 WL 4201613, at *5 (M.D. Fla. Sept. 16, 2024) (holding that citing specific sections of a contract is insufficient because it does not specify the provisions breached by a defendant's conduct). Because no contract provision is specified in the complaint, Count II is also dismissed.

### Count III. Negligence

Next, Plaintiff alleges that Fifth Third Bank was negligent. Specifically, the bank owed the following duties of care:

> a. Maintain reasonable security measures to protect Plaintiff's accounts
> b. Implement requested security enhancements
> c. Monitor accounts for suspicious activity
> d. Properly investigate claims of unauthorized transactions
> e. Promptly reimburse unauthorized transactions in accordance with applicable laws and regulations

(Doc. 1 ¶ 36.)

This claim is practically a carbon copy of the breach of contract claim just discussed. And that is exactly what Ohio's economic loss rule is designed to prevent. The rule stands for a straightforward proposition: where the parties have a contract, any negligence claim must be independent of the contract claim. *Windsor Med. Ctr., Inc. v. Time Warner Cable, Inc.*, 167 N.E.3d 23, 29 (Ohio App. 5 Dist. 2021). In other words, the tort must derive from duties that would exist even without the parties' contract. *Netherlands Ins. Co. v. BSHM Architects, Inc.*, 111 N.E.3d 1229, 1236 (Ohio App. 7 Dist. 2018) ("Where the causes of action in tort and contract are factually intertwined, a plaintiff must show that the tort claims derive from the breach of duties that are independent of the contract and that would exist notwithstanding the contract.").

It is hard to imagine that Fifth Third Bank would owe any duty to protect Plaintiff's money without the parties' contract. The premise of their agreement is straightforward: "Customer [(Nathan's)] desires to obtain and [Fifth Third] Bank agrees to provide the Services as set forth in this Agreement[.]" (Doc. 22-1 at 2.) From there, the contract sets the rules of the road. It requires Plaintiff to maintain the account, tasks the bank with executing wire transfers, and assigns specific security responsibilities to the customer. (Doc. 22-1 at 2, 5.) Without the contract, there is no account to monitor. There are no wire transfers to investigate. And there is no money to reimburse. The takeaway is

simple: Every duty Plaintiff points to is a creature of contract, not some independent tort obligation floating in the ether.

And the overlap doesn't stop at the duty element. It extends to the damages, too. At its core, Ohio's economic loss rule exists to keep contract and tort law in their respective lanes. When parties have a contract that assigns recoverable economic losses, a plaintiff cannot use a tort claim to recover those exact same damages. *Windsor Med. Ctr., Inc.*, 167 N.E.3d at 29. To survive, then, the tort claim must allege damages that are separate and distinct from the breach. *Id.*; *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 151 (1996) ("In addition to containing a duty independent of that created by contract, an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the breach of the contract."). Plaintiff does not even try to meet this bar. Instead, Plaintiff copies and pastes its damages demand from one count to the next: "As a direct and proximate result of Defendant's negligence, Plaintiff has suffered damages in excess of $850,000." (Doc. 1 ¶¶ 35, 38.) The complaint makes no effort to distinguish which damages flow from the bank's supposed negligence and which flow from the breach. Without separate, allocated damages, the negligence claim cannot stand.

10

Plaintiff professes that the economic loss rule does not apply here because the complaint lists reputation damages. Indeed, the complaint lists various types of damages suffered generally:

> a. Unrecovered fraudulent debits
> b. Bank fees (overdraft and returned check fees)
> c. Late fees paid to suppliers
> d. Increased supply costs due to loss of favorable terms
> e. Annual increased costs due to loss of preferential pricing
> g. Lost contract revenue
> h. Lost business revenue to date
> i. Damages to credit standing and business reputation
> j. Damages for emotional distress and mental anguish[.]

(Doc. 1 ¶ 24.) But the economic loss rule applies to "intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things." *Fast Tract Title Services, Inc. v. Barry*, 2026 WL 395079, at *6 (Ohio App. 8 Dist., 2026). The complaint does not list any physical harm to a person or tangible thing. Plaintiff's reputational damages are an indirect economic loss at best. Thus, the economic loss rule applies. And because it bars the negligence claim, Count III is dismissed.

### Count IV.  Gross Negligence

What applies to simple negligence applies to gross negligence, too. Under Ohio law, gross negligence is the "failure to exercise any or very slight care" or the "failure to exercise even that care which a careless person would use." *Bennett v. Biernacki*, 204 N.E.3d 39, 42 (Ohio App. 12 Dist., 2022). But dialing

up the adjective does not bypass the threshold requirement: a plaintiff still has to point to a legal duty that exists completely outside the four corners of the contract. And as we just established, Plaintiff can't do that here.

The complaint alleges no new or different facts to set this claim apart from its standard negligence claim. Instead, it relies on a single, conclusory line, asserting that the bank's failure to stop the fraudsters was an "extreme departure from the standards of ordinary care." (Doc. 1 ¶ 39.) That is a legal conclusion masquerading as a fact, and it simply will not stick. Count IV is dismissed without prejudice.

### Counts V.  Negligent Misrepresentation

Moving on, Plaintiff claims that Fifth Third Bank's agents made false representations regarding their security measures. (Doc. 1 at 10-11.) Apparently, representatives of each party met at the bank several times. During these meetings, Plaintiff requested that specific security measures be implemented. Fifth Third Bank allegedly confirmed that those measures were or would be adopted and that Plaintiff's "money was secure." (Doc. 1 ¶¶ 8-10.) They were negligent in representing that, according to Plaintiff, since the money was stolen.

Ohio law defines negligent misrepresentation as: "(1) one who, in the course of his or her business, profession, or employment, or in any other transaction in which he or she has a pecuniary interest; (2) supplies false

12

information for the guidance of others in their business transactions; (3) is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information; and (4) if he or she fails to exercise reasonable care or competence in obtaining or communicating the information." *Martin v. Ohio State Univ. Found.*, 139 Ohio App. 3d 89, 103 (2000).

Plaintiff's claim, as best the Court can discern, is that Fifth Third Bank, responsible for safeguarding Plaintiff's funds, exaggerated its security measures despite Plaintiff's explicit security requests. This caused Plaintiff to rely on Fifth Third Bank's assurances and keep the money there, ultimately losing over $850,000 when that money was stolen by someone else. These allegations hit all the elements.

Fifth Third Bank pushes back, arguing that its assurances were nothing more than future promises. And under Ohio law, future promises can't anchor a misrepresentation claim. *Cuspide Properties, Ltd. v. Earl Mechanical Servs.*, 53 N.E.3d 818, 832 (Ohio App. 6 Dist., 2015). But that argument misses the mark. Plaintiff does not just complain about a bank breaking its word about tomorrow's security upgrades. It alleges that the bank made clear statements about the here and now. According to the complaint, Fifth Third Bank assured Plaintiff that its money was secure and that certain security measures "were . . . implemented" right then and there. (Doc. 1 ¶ 9.) That is not a future forecast; it is an assertion of present fact.

13

Fifth Third Bank tries a different angle based on timing. It argues that under Ohio law, any representations made *after* the parties signed their agreement are flatly barred. (Doc. 22 at 13.) To back this up, the bank points to *Christmas v. CitiMortgage, Inc.*, No. 3:14-CV-071, 2014 WL 2117453 (S.D. Ohio May 21, 2014).

Fifth Third Bank is overreading that decision. *Christmas* did not establish a blanket rule for all post-contract statements. The plaintiff in that case was alleging fraudulent *inducement*—claiming that statements made *after* the contract was executed somehow led him to enter the deal in the first place. The court there quite sensibly observed that it is "difficult to imagine how subsequent activities could have induced" an earlier action. *Id.* at *6. But that logic is completely beside the point here. Plaintiff is not bringing an inducement claim, so *Christmas* gives the bank no help.

Finally, like above, Fifth Third Bank presses the economic loss rule. But "the economic loss rule does not apply to claims for negligent misrepresentation." *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1032 (6th Cir. 2003). And in any event, the economic loss rule applies when a tort claim is intertwined with the contract's terms. *Netherlands Ins. Co.*, 111 N.E.3d at 1236. Here, we just don't know if that is true. It is impossible to tell from the face of the complaint whether these enhanced security features were part and parcel of the written agreements or something

14

entirely separate. If the bank's agents stepped outside the contract to make distinct, standalone factual misrepresentations, the economic loss rule may not stand in the way. To find out where the contract ends and these security assurances begin, we need a more developed record.

Put all that together, and Plaintiff has done enough to keep this claim alive. Fifth Third Bank's motion to dismiss Count V is thus denied.

### Count VI. Fraudulent Misrepresentation

Plaintiff's fraudulent misrepresentation claim looks a lot like the negligent misrepresentation claim we just kept alive. The only real difference is one extra alleged lie: that Fifth Third misled Plaintiff about the true "basis for denying [the] fraud claim." (Doc. 1 at 10.) But swapping negligence for fraud changes the ground rules. Under Federal Rule of Civil Procedure 9(b), standard pleading notice will not cut it. A plaintiff must state the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9.

In practice, that means the complaint must provide the who, what, when, where, and how of the alleged deception. *In re Palm Beach Fin. Partners, L.P.*, 488 B.R. 758, 775 (Bankr. S.D. Fla. 2013). Plaintiff falls far short of that line. The complaint outlines the general topic of the discussions, points to an unnamed Fifth Third Bank "representative," and sets the scene at the bank's Lehigh Acres branch. (Doc. 1 at 10-11.) But that is it. Vague summaries and a

15

branch location are far too imprecise to satisfy the heightened demands of Rule 9(b). Count VI is thus dismissed.

### Count VII. Intentional Infliction of Emotional Distress

To plead a claim for intentional infliction of emotional distress under Ohio law, a plaintiff must clear a remarkably high bar. You have to show that the defendant's conduct was so extreme and outrageous that it went "beyond all possible bounds of decency," landing somewhere civilized society considers utterly intolerable. *Yeager v. Loc. Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 453 N.E.2d 666, 671 (Ohio 1983). Next, you have to prove that the defendant either intended to cause severe emotional distress or acted with total recklessness regarding that risk. *Id.* And finally, you must show that the resulting mental anguish was severe. Suffice it to say, this tort is reserved for the truly egregious.

Plaintiff's allegations are woefully short of that line. At its core, this case is a commercial banking dispute over a pair of unauthorized fraudulent transfers. The absolute worst conduct claimed is that a bank representative allegedly told Plaintiff it was their own fault for not watching the account closely enough. That might be terrible customer service, but it is not outrageous in the legal sense. Business relationships break down, and parties frequently point fingers when things go wrong. But a bank handling a fraud

investigation poorly or shifting blame does not cross the line into the kind of shocking, decency-shattering cruelty this tort is designed to punish.

But even if we were to stretch the definitions and pretend the bank's behavior was shocking, Count VII runs into a bigger roadblock: Plaintiff is a corporation. A corporation, by its very nature, is a legal fiction. It has a balance sheet, it has articles of incorporation, and it has vendor contracts. What it does not have is emotion. It cannot experience anxiety or suffer mental anguish. Because a corporation is incapable of emotion, the Court "is hard-pressed to understand how a business entity such as [Plaintiff] can suffer emotional distress, much less recover damages for such an injury." *Jesal Corp. v. Main St. Bank*, No. 1:08-CV-0109-CAP-LTW, 2009 WL 10711976, at *11 (N.D. Ga. Jan. 27, 2009). Count VII is therefore dismissed.

### Count VIII. Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")

Plaintiff's FDUTPA claim alleges that Fifth Third Bank violated the statute by misrepresenting its security measures, failing to implement more security measures, conducting an inadequate investigation into the stolen funds, denying Plaintiff's fraud claims, and reporting false information to credit bureaus. (Doc. 1 ¶ 57.) But this claim hits a wall before it can even get off the ground.

17

The first problem is one we have already addressed: choice of law. As established above, the parties explicitly agreed that Ohio law governs "any claims or disputes relating to or arising out of" their banking relationship. (Doc. 22-1 at 11.) Plaintiff did not contest that choice, or the bank invoking the clause here. Because Ohio law controls, Plaintiff cannot leverage a Florida consumer-protection statute to police the bank's conduct.

But even if we set the contract aside and pretend Florida law controls, the FDUTPA claim fares no better on the merits. The Florida legislature built a clear, unambiguous cutout into the statute: FDUTPA does not apply to banks regulated by federal agencies. Fla. Stat. § 501.212(4)(b)-(c). Plaintiff explicitly alleges in the complaint that Fifth Third is a "national banking association chartered under the laws of the United States." (Doc. 1 ¶ 4.) That federal charter places the bank squarely within the statutory exemption. *See Green v. Cap. One Bank (USA), N.A.*, No. 8:14-CV-1950-T-30MAP, 2015 WL 419300, at *2 (M.D. Fla. Feb. 2, 2015); *City of St. Petersburg, Fla. v. Wachovia Bank, Nat. Ass'n.*, No. 810-CV-693-T-26TBM, 2010 WL 2991431, at *3 (M.D. Fla. July 27, 2010) ("[I]t is clear that the FDUTPA does not apply to federally regulated banks[.]"). So no matter which state's law you look at, this claim is a non-starter. Count VIII is dismissed.

18

### Count IX.  Florida Civil Remedies for Criminal Practices Act ("FCRCPA")

The FCRCPA is Florida's version of a civil RICO statute. For starters, this claim fails for the same reasons just discussed—the parties explicitly agreed that Ohio law governs their relationship. Again, Plaintiff cannot shrug off its own contractual choice of law by reaching for a Florida statute.

The merits are also a nonstarter. The FCRCPA gives victims of a "pattern of criminal activity" a chance to recover three times their actual damages. Fla. Stat. § 772.102(4). To establish a pattern, a plaintiff must point to at least two interrelated criminal incidents that are not just isolated events. But the Florida legislature added an important catch: a plaintiff cannot spin a "pattern" out of multiple fraudulent acts if they all stem from a single contract or transaction against the same person. *Id.* Plaintiff tries to clear this hurdle by alleging a pattern of theft, communications fraud, and fraudulent practices tied to Fifth Third's banking enterprise. (Doc. 1 ¶¶ 60, 61.) And that is pretty much all Plaintiff has to say on the matter.

That bare-bones approach is a non-starter. Civil RICO claims are essentially a specific breed of fraud, which means they trigger the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). To get past the starting line, a complaint has to state the circumstances of the fraud with

19

real particularity. *See Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). Plaintiff does not make that kind of effort. The complaint leaves the Court in the dark about what criminal acts the bank supposedly committed, when they happened, who was responsible, or how they are connected. *Compare Gov't Emps. Ins. Co. v. AFO Imaging, Inc.*, 2021 WL 734575, at *11 (M.D. Fla. Feb. 25, 2021). Because the complaint fails to plead a pattern of criminal activity with the requisite specificity, Count IX is dismissed.

### Count X.   Breach of Fiduciary Duty

Here, Plaintiff alleges that Fifth Third Bank owed it a fiduciary duty simply by virtue of holding its commercial funds and financial information. In Plaintiff's view, the bank breached that high duty by failing to lock down the account with proper security measures and bungling the subsequent fraud investigation. Fifth Third Bank counters with a basic rule of banking law: an ordinary, arm's-length relationship between a bank and its depositor is a business arrangement, not a fiduciary bond.

The bank is right. "Absent special circumstances, Ohio law does not recognize a fiduciary duty between a bank and its customer." *BAS Broadcasting, Inc. v. Fifth Third Bank*, 110 N.E.3d 171, 175 (Ohio App. 6 Dist., 2018). Plaintiff thinks its security meetings with bank staff created that kind

20

of special relationship, but the scenario it describes is entirely ordinary. Without some binding precedent—which neither side has provided—this Court declines to find that a bank transforms into a fiduciary the moment it offers basic assurances to a customer. Any business owner can walk into a local branch, ask about security features, and receive answers about how the bank guards its vaults. In fact, account management and fraud reduction tools were already baked directly into the parties' written contracts. That kind of everyday, run-of-the-mill commercial interaction is a far cry from the deep trust and undivided loyalty that a true fiduciary bond demands. *See, e.g.*, *Collins v. National City Bank*, 2003 WL 22971874, at *2 (Ohio App. 2 Dist., 2003) ("A bank owes no fiduciary duty to its *own customers* in a commercial context when the parties deal at arm's length."). For these reasons, Count X is also dismissed.

### Count XI. Racketeer Influenced and Corrupt Organizations Act ("RICO")

Finally, we reach Plaintiff's federal RICO claim. The complaint charges that Fifth Third Bank ran an ongoing racketeering scheme by repeatedly waving through unauthorized transactions and then rubber-stamping denials on reimbursement requests just to boost its corporate profits. (Doc. 1 at 13-14.) To spin this standard banking dispute into a federal racketeering case, Plaintiff lists wire fraud, bank fraud, and money laundering as its predicate

21

crimes. This claim suffers from the same fatal defects as its state-law counterpart. Plaintiff offers only sweeping conclusions and vague generalities rather than concrete facts. It fails to plausibly describe a continuous pattern of criminal behavior or to identify a distinct enterprise separate from the bank itself. Count XI is therefore dismissed.

## IV. Conclusion

Out of the eleven counts Plaintiff threw at the wall, only one manages to stick. Because Plaintiff plausibly alleged that the bank's agents made false statements about the present reality of its account security, the claim for negligent misrepresentation survives. As for the rest of the complaint, the statutory counts are legally barred, the contract claim lacks an actual contract provision, the torts are swallowed by the parties' agreements, and the emotional distress and racketeering claims are completely meritless. They are all dismissed.

While several of Plaintiff's claims are highly questionable given the underlying facts, leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a). "This rule severely restricts a district court's discretion to dismiss a complaint without first granting leave to amend." *Abner v. Mobile Infirmary Hosp.*, 149 F. App'x 857, 859 (11th Cir. 2005). Accordingly, the Court grants Plaintiff leave to amend.

But the amendment comes with a warning. Packing a complaint with

22

eleven overlapping counts is not effective. Instead of a targeted litigation strategy, what we have here is a textbook shotgun pleading—and a largely frivolous one at that. Plaintiff needs to take a hard look at what this case actually is: a commercial banking dispute over a pair of unauthorized transfers. Dressing up a contract failure or the bank's subpar fraud investigation as a federal RICO conspiracy wastes time and judicial resources. Let this paragraph serve as an explicit warning: if Plaintiff chooses to file an amended complaint, counsel must constructively think through which legal theories actually apply to these facts, or sanctions will follow.

Accordingly, it is **ORDERED**:

1.     Fifth Third Bank's Motion to Dismiss (Doc. 22) is **GRANTED IN PART AND DENIED IN PART** as set forth above;

2.     Plaintiff may file an amended complaint within ten days. If no further pleading is filed, this case will proceed on the only remaining claim.

**ENTERED** in Fort Myers, Florida on May 26, 2026.

Kyle C. Dudek
United States District Judge

23